Ross BROWN, Plaintiff,

v.

### J.C. PENNEY CORPORATION, Defendant.

No. 95–707–CIV–MARCUS.

United States District Court,
S.D. Florida.

Feb. 20, 1996.

---

Miguel M. de la O, Miami, Florida, for Plaintiff.

G. Thomas Harper, Jacksonville, Florida, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment, filed December 15, 1995. After a thorough review of the record and pleadings, and having considered the argument of counsel, the Defendant's *motion for summary judgment must be and is GRANTED.*

### I.

The Defendant, J.C. Penney Company, Inc., is major retailer that operates a store at the Dadeland Mall in Miami, Florida. The Plaintiff, Ross Brown, worked as a Customer Service Supervisor at the Dadeland Mall store. In late July, 1994, the Plaintiff requested a leave of absence pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2612, *et seq.* ("FMLA"). Brown sought this leave to care for his terminally ill father in New Jersey. The Plaintiff requested a twelve (12) week leave, but indicated on his FMLA leave application that his absence might end sooner than that. The Plaintiff's last day of work prior to his leave was Sunday, July 24, 1995. On September 11, 1994, while Brown was still on leave, the Defendant placed Sonia Cannon in Brown's position of Customer Service Supervisor.

The Plaintiff's father died on September 23, 1994; however, Brown did not contact the Defendant's management personnel about this occurrence. The Plaintiff reported in person to the Dadeland Mall store on October 22, 1994. At that time, the Defendant informed Brown that he would not be given his old job, and instead had been assigned to a position as a Sales Associate in the Men's Sportswear Department at his former rate of pay. Brown refused to accept this position, and the Defendant proceeded to terminate him.

The Plaintiff filed this lawsuit on March 15, 1995, alleging a violation of the FMLA. According to Brown, J.C. Penney had an obligation to restore him to his former position as Customer Service Supervisor, or provide him with a job of comparable stature. The Defendant filed an answer on April 10, 1995, and the instant motion for summary judgment on December 15, 1995. According to J.C. Penney, the Plaintiff relinquished his rights under the FMLA by failing to return to work after his father's death on September 23, 1994. In the alternative, J.C. Penney insists that the statutory maximum of twelve weeks of leave expired on October 17, 1994—five days before the Plaintiff reported in person to resume his duties at the Dadeland Mall store. The Plaintiff filed a response to the Defendant's motion on January 26, 1996, and the Defendant replied on February 12, 1996.[1]

---

1. The Plaintiff contends that several genuine issues of material fact remain in this lawsuit. We disagree. First, Rule 7.5 of the Local Rules of the Southern District of Florida explains that

"[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the opposing party." The Plaintiff does not controvert

## II.

The standard to be applied in reviewing summary judgment motions is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit has explained:

In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh*, 651 F.2d [983] at 991 [ (5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide trial. *Marsh*, 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.*, 420 F.2d at 1213. If reasonable minds might differ

on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic [Techniques, Inc. v. Wackenhut Protective Systems, Inc.,]* 669 F.2d [1026] at 1031 [ (5th Cir.1982) ]; *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh*, 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has recently provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320

---

any of the facts identified in the Defendant's statement of material facts, which is based wholly on excerpts from the Plaintiff's deposition. Second, Brown's attempt to create a genuine issue of fact as whether his October telephone conversations with the Defendant's personnel managers qualify as "reporting" to work is irrelevant to the threshold question of whether he had an obligation to return to the Dadeland Mall

store after his father's death in September. *See* infra, at 1161–63. The remaining "jury issues" identified by Brown are pure questions of law concerning the language and scope of the FMLA. At oral argument, Plaintiff's counsel confirmed the following undisputed facts: Brown commenced his leave on July 25, 1994; his father died on September 23, 1994; and he did not return to work until October 22, 1994.

U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the nonmovant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In another recent case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added). We measure the Defendant's motion for summary judgment against these standards.

## III.

◼ The Defendant's first ground for summary judgment is based on the undisputed fact that Brown failed to return to work until almost a month after his father's death on September 23, 1994. According to the Defendant, "Plaintiff's approximate one month absence from work subsequent to September 23rd was no longer covered as FMLA leave because he no longer satisfied the criteria for covered leave" under the statute. As a result, the Defendant maintains, its alleged refusal to restore Brown to his former position (or a comparable position) upon his return on October 22, 1994 did not violate the FMLA. We agree.

The FMLA provides that an "eligible employee shall be entitled to a total of twelve (12) workweeks of leave ... in order to care for ... a ... parent ... *if such ... parent has a serious health condition.*" 29 U.S.C. § 2612(a)(1)(C) (emphasis added). The Plaintiff's application for FMLA leave was to "care for an immediate family member with a serious health condition." *See* Plaintiff's dep., exh. 1 and 2. The parties agree that Brown's father suffered from a serious health condition within the meaning of the statute from the date the Plaintiff commenced his leave to the date of his father's death. The parties disagree, however, over whether the term "serious health condition" encompasses the month after Charles Brown's death. J.C. Penney insists that the "serious health condition" justifying the Plaintiff's FMLA leave ended when Brown's father died. The Plaintiff suggests otherwise in his response:

> After September 23, 1994, it is undisputed that Brown continued to care for his father due to the death caused by that serious health condition. Brown took care of all his father affairs, requiring more of his time than when his father was still alive. Brown was still caring for his father—albeit post-humously.

Response, at 4. In essence, therefore, the Plaintiff is arguing that his father's "serious health condition" did not end with his death. This argument has no support in the language of the statute or the relevant regulations. The FMLA defines serious health condition as:

an illness, injury, impairment, or physical or mental condition that involves

> (A) inpatient care in a hospital, hospice or residential medical care facility; or
>
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.114 (listing examples of serious health conditions). This language seems to contemplate that the term "serious health condition" is limited to health problems that afflict an individual who is alive. The legislative history of the statute underscores this conclusion:

> The definition of "serious health condition" ... is broad and intended to cover various types of physical and mental conditions.
>
> \* \* \* \* \* \*
>
> Examples of serious health conditions include but are not limited to heart attacks, heart conditions requiring heart bypass of valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nerve disorders, injuries caused by serious accidents on or off the job, ongoing pregnancy, miscarriages, complications or illnesses related to pregnancy ... All of these conditions meet the general test that either the underlying health condition or the treatment for it requires that the employee be absent from work on a reducing basis or for more than a few days for treatment or recovery. They also involve either inpatient care or continuing treatment or supervision by a health care provider, and frequently involve both. For example, someone who suffers a heart attack generally requires both inpatient care at a hospital and ongoing medical supervision after being released from the hospital; the patient must also be absent from work. Someone who has suffered a serious industrial accident may require initial lengthy

treatment in a hospital and periodic physical therapy under medical supervision thereafter.... All of these conditions require absences from work either for the condition or operation itself or for continuing medical treatment and supervision.

1993 U.S.C.C.A.N. at 30–31. The nature of the "serious health conditions" cited in this excerpt suggests that the drafters of the FMLA were concerned with medical conditions affecting the living. Perhaps for this reason, the Plaintiff cites absolutely no case law or statutory language to support his view that a parent's "serious medical condition" continues for purposes of the statute even after the parent has died.[2] As a result, we see no basis to carve out a judicially crafted exception to an otherwise plain limitation in the FMLA. Moreover, Brown offers us no meaningful benchmark to use in evaluating just how long after a parent's death a child is permitted to "care" for the deceased parent's estate without abandoning the protections of the FMLA. Put simply, if Congress wanted to ensure that employees on FMLA leave could take additional time off after a family member died from a serious health condition, it easily could have said so in the statute.

As J.C. Penney points out, its proposed construction of the statute does not mean that an employee is invariably required to return to work immediately after the death of a family member. While the FMLA does not provide relief, many companies, including the Defendant, provide a "funeral pay policy" that applies to employees in Brown's position. At no point does the Plaintiff suggest that the Defendant's handling of the Plaintiff violated the company's funeral policy. Indeed, it is undisputed that the Plaintiff did not inform his employer of his father's death until he returned to work in October.

The parties devote additional argument to the Plaintiff's suggestion that his efforts on behalf of his father's estate came within the definition of "caring" for his father. We

---

**2.** The Plaintiff does take issue with the Defendant's citation to *Seidle v. Provident Mutual Life Insurance Co.*, 871 F.Supp. 238 (E.D.Pa.1994) and *Sakellarion v. Judge & Dolph, Ltd.*, 893 F.Supp. 800 (N.D.Ill.1995) for the proposition that courts "strictly apply the statutory definition of a FMLA protected leave." Motion, at 5–6.

We agree that neither of these cases mandates a strict construction of the statute. Nevertheless, even a generous reading of the FMLA fails to support the Plaintiff's argument that the statute allows for continued leave after the death of a family member.

emphasize that even if the Plaintiff is correct, the critical inquiry remains whether a "serious health condition" existed after Charles Brown's death. We note, however, that the Plaintiff offers no citation to the statute, regulations or case law to support his assertion that his activities after his father's death come within the legal definition of caring for a parent. The FMLA regulations define "to care for" as follows:

(a) The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.

(b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.116(a), (b). It is clear that the Plaintiff's activities following his father's death simply do not fall within the boundaries of this definition. Under these facts and circumstances, therefore, the Court finds that there is no genuine issue of material fact as to whether Brown abandoned his rights under the FMLA by failing to return to work until one month after his father's death from a serious health condition.

■ The Plaintiff places a great deal of emphasis on the fact that, while he was on leave, the Defendant gave his job as Customer Service Supervisor to Sonia Cannon. Brown states that J.C. Penney violated the statute as of September 11, 1994 (two weeks before his father died). As the Defendant explains, however, the FMLA does not require that an employee be returned to the exact position that he held prior to embarking on his leave. Rather, the statute provides that:

[A]ny eligible employee who takes leave under section 102 for the intended purpose of the leave shall be entitled, on return from such leave

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1); *see also* 29 C.F.R. § 825.214(a) (noting that an employee is entitled to reinstatement "even if the employee has been replaced"). This language makes clear that J.C. Penney did not violate the statute through the mere act of substituting Cannon for Brown as Customer Service Supervisor on September 11, 1994, even if it intended this change to be permanent. If a violation did occur, it took place when Brown returned from his FMLA leave and J.C. Penney offered him position of Sales Associate. However, even assuming arguendo that the Sales Associate post was not the "equivalent" of Brown's former position, this job assignment was not made until *after* the Plaintiff had relinquished his protection under the FMLA.[3]

For all of the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment is GRANTED. All pending motions not oth-

---

**3.** We are aware of no record evidence to suggest that, at the time J.C. Penney gave the Customer Service Supervisor position to Cannon, it did so intending to demote the Plaintiff *even if* he returned within the permissible time frame of the FMLA. We note that, according to the Plaintiff, the Defendant "does not dispute" that the position of Sales Associate was not the equivalent of a Customer Service Supervisor. Response, at 3.

Brown does not offer a citation to support this assertion, though, and, indeed, offers no record evidence as to the nature and duties of the two positions that he contends are not equivalent. The Plaintiff did concede at his deposition that the Defendant informed him that the Sales Associate position would be at the same wage as his former job. Brown dep. at 147.

erwise ruled upon are DENIED AS MOOT. The Defendant is directed to file a proposed order of final summary judgment within ten (10) days of the date of this Order.[4]

DONE AND ORDERED.

---

[4] In light of our ruling that the Plaintiff's FMLA protection ended after his father's death on September 23, 1994, we need not reach the Defendant's additional arguments that the Plaintiff did not mitigate his damages and that he exceeded the statutory maximum of twelve weeks leave by failing to return to the Dadeland Mall store on or before October 17, 1994.