**Roy Eugene BEAL, et al., Plaintiffs,**

v.

**RUBBERMAID COMMERCIAL PRODUCTS INC.,
Defendant.**

**Civ. No. 4–96–CV–90310.**

United States District Court,
S.D. Iowa,
Central Division.

Aug. 14, 1997.

I. John Rossi, Des Moines, IA, Craig Rogers, Waukee, IA, for Plaintiffs.

Gayla R. Harrison, Johnson, Hester & Walter, Ottumwa, IA, for Defendant.

## ORDER

PRATT, District Judge.

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment filed in this court on April 30, 1997. Plaintiffs filed their Resistance to Defendant's Motion for Summary Judgment on June 16, 1997. Defendant filed its Reply on June 24, 1997. A hearing was held on July 31, 1997 and Plaintiffs filed a Supplement to Oral Argument on August 6, 1997. This motion is now fully submitted.

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Defendant's Motion for Summary Judgment should be granted.

## II. BACKGROUND

The following facts are either undisputed or viewed in light most favorable to the nonmoving party. See *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir. 1990); *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). On April 15, 1996, the four named Plaintiffs, Roy Beal, Ruth Stewart, Karen Hughes, and Julie McKay,[1] jointly filed an action in this court, under the Family and Medical Leave Act [FMLA]. 29 U.S.C. §§ 2601–2654 (1993). They claim that their employer, Rubbermaid, violated the FMLA, among other things, by terminating or constructively terminating their employment due to absences which should have been exempted pursuant to provisions of the FMLA. Plaintiffs also allege that Defendant violated the following regulations which were promulgated pursuant to the provisions of the FMLA: 29 C.F.R. § 825.300(b) (failing to post notice of relevant provisions of the FMLA); 29 C.F.R. § 825.208(a) (failing to give notice to the employees of designation of leave as FMLA or non-FMLA leave within two days); 29 C.F.R. § 825.307(a)(2), (b) (requiring Plaintiffs to obtain certification from company physician); 29 C.F.R. § 825.302 (requiring a 30–day notice for all *"non-emergency"* situations) (emphasis added); and 29 C.F.R. § 825.114 (considering absences of seven days or less not eligible for the FMLA). In Plaintiffs' Complaint, there are additional claims: breach of contract, violation of the Iowa Civil Rights Statutes, and retaliatory discharge.

Defendant's employee handbook includes a provision on employee attendance and specifically delineates a progressive disciplinary point system which ultimately results in termination for accumulation of seven points. The handbook also includes personal and family leave provisions which essentially track the FMLA regulation language regarding "serious health conditions." Additionally, it contains a funeral leave provision allowing for three paid days following the death of a

---

1. The Complaint in this action makes reference to a class action, however, there appears to be no Motion for Class Certification anywhere in the record.

family member, with the possibility of additional time upon request of the employee.[2]

For convenience and clarity, the court will lay out the facts as to each Plaintiff separately.

**Plaintiff Beal:**

Plaintiff Beal began working for Rubbermaid in 1986. He was discharged on May 22, 1995. On March 31, 1995, Beal was placed on a performance plan addressing eight areas needing improvement including, among other things, attendance and improper filling out of time cards. This plan required Beal to submit progress reports every two weeks and specifically stated that "[i]f this plan yields only short term results, you will be subject to disciplinary action and possibly termination."

Beal injured his back on or about April 12, 1995. As a result, he missed work April 12 and 13, 1995. He went to his personal doctor, Dr. Cassady, on April 13 and had his back "manipulated." He does not recall if he received a prescription at this time or not. Dr. Cassady gave Beal a work release note recommending that he not work until April 18, 1995. Defendant originally assessed one point for this absence but later waived it.

Beal returned to work on April 21, 1995. He worked on April 22, and one hour on April 23. Beal worked these days even though his second work release note released him from work until April 27, 1995. He worked again on May 8, 1995.

At his supervisor's request, Beal saw the company physician on May 11, 1995 "when [his] back went out again" and was told he could return to work with some restrictions.[3] Beal saw the company physician again on May 17, 1995, at which time he was given a return to work notice as of that date.[4] He did not work May 15, 16, 20, 21, and 22, 1995.

Defendant terminated Beal's employment on May 22, 1995. His termination notice states he was discharged for poor performance.[5]

**Plaintiff Stewart**

Plaintiff Ruth Stewart began working for Rubbermaid in 1989. She was discharged on or about March 25, 1995, after accumulating seven points under the progressive-discipline attendance policy.

Stewart has a skin condition diagnosed as eczema, which she maintains periodically results in swelling and skin lesions. The discomfort from the condition typically lasts less than twenty-four hours.[6] Medical Records reveal that Stewart only saw her physician regarding this condition two or three times between July 1990 and March 1995. According to her own recollection, Stewart called her physician, Dr. Cassady, approximately three times from January to March of 1995. She took over-the-counter medications, rather than prescriptions, to relieve her discomfort and would often "go home and soak" in Aveeno or some similar soothing bath.[7] Additionally, she sometimes would put on some medicine that Dr. Cassady had given her.

The only doctor's notes that Stewart possesses which refer directly to a skin condition were issued from Dr. Cassady on March 6 and March 30, 1995, respectively. The note drafted on March 6, 1995 exempted her from work until March 10, 1995. Stewart had the originals of these notes in her possession at the time of her deposition. The twenty-one medical excuse forms in her file made no reference to a skin condition.[8]

**Plaintiff Hughes**

Plaintiff Karen Hughes began working for Rubbermaid in 1993. She voluntarily terminated her position with Rubbermaid on March 5, 1995, after being called back from a voluntary four month layoff.

In the spring of 1995, Hughes was absent from work when her husband, who was also employed by Rubbermaid, had surgery relat-

---

2. See the Employee Handbook, Defendant's Deposition Exhibit # 1, at page 23.

3. See Beal Deposition page 73, 75.

4. Beal did not give such note to Defendant until May 22, 1995, on the date of his termination. See Beal Deposition at page 89.

5. Summary Judgment Exhibit 13, attached to Defendant's Reply Brief.

6. See Stewart Dep. at 51.

7. See Stewart Dep. at 67, 80.

8. See Stewart Dep. at 75–76.

ed to diabetes. Defendant originally assessed her a point for this absence, but the point was later waived. Hughes did not receive a disciplinary warning related to this point.

In August of 1995, Hughes' husband was again hospitalized as a result of diabetic complications. Hughes requested time off to care for her husband during his surgery and recuperation period. She was assessed a point under the company's absenteeism policy for taking this time off. As a result, Hughes was disciplined at the Attendance Policy Step II level. This point, however, was also waived at a later date.

Hughes accumulated two more half-points in September of 1995, one when her husband left work sick and she drove him home and one when her son was taken to the emergency room for problems associated with asthma.

On October 12, 1995, Hughes was assessed another half-point when she left work early to go to the emergency room. She was treated for bronchitis and released. She got a prescription for an antibiotic which she filled, but she did not have any followup appointments related to the bronchitis. Hughes was able to perform her normal family-related activities after her emergency room visit.[9]

In November of 1994, Hughes took a voluntary layoff from the company. In February, 1995, she was called back to work. She took some vacation days and then voluntarily quit her position. She claims she quit because she had previously been told that if she received one more point she would be fired.

**Plaintiff McKay**

Plaintiff Julie McKay began working for Rubbermaid in 1992. She was discharged on July 13, 1995. On April 12, 1995, McKay injured her back while working at Rubbermaid. She was sent to the company doctor and returned to work immediately thereafter without missing any work time. She was able to perform all of her normal job functions. After this injury, McKay also saw her personal physician one time. He readjusted her back and gave her a prescription for a

muscle relaxant. He did not give her any work restrictions or limitations.

On May 13, 1995, McKay's son was killed in a car accident. She took three days of paid leave in accordance with the funeral leave provision in the employee handbook. At her request, she was given an additional thirty days of unpaid leave to deal with her loss. Subsequently, she returned to work.

On the evening of July 10 or 11, 1995, McKay again injured her back. She contends that she informed the supervisor at the time of the injury. McKay finished working that shift, but was absent from work on her next scheduled shift, July 13, 1995. She called to inform the company of her absence. That same day David Laurson signed McKay's termination notice. McKay went to her own doctor, Dr. Cassady, either on July 13 or 14 to have her back readjusted. Between July 13, 1995 and the time of the deposition, she saw her doctor three or four times to have her back readjusted and to refill the prescription for muscle relaxants.

## III. LEGAL STANDARD

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994); *City of Columbia*, 914 F.2d at 153; *Woodsmith Publ'g*, 904 F.2d at 1247. The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once the mov-

---

9. See Hughes Dep. at 42, 43.

ing party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.Pro. 56(c), (e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." [emphasis added] *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## IV. ANALYSIS

### A. Plaintiffs' Claims Pursuant to the FMLA

Count I of Plaintiffs' Complaint alleges that Defendant violated provisions of the Family Medical Leave Act [FMLA], 29 U.S.C. § 2601. Primarily, Plaintiffs claim Defendant terminated or constructively terminated their employment in violation of the Act. Defendant moves to dismiss this count as to all Plaintiffs on the basis that they do not have "serious health conditions" necessary to become entitled to leave under the

Act. *See Seidle v. Provident Mut. Life Ins. Co.,* 871 F.Supp. 238, 244 (E.D.Pa.1994) (evidence failed to demonstrate Plaintiff's son had serious health condition requiring continuing treatment or supervision by health care provider).

Section 2612 of Title 29 of the United States Code provides in relevant part that:

an eligible employee [10] shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

. . . .

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition. [or]

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1) (West Supp.1995).

A "serious health condition" is any physical or mental condition that involves inpatient care or continuing treatment by a health care provider.[11] 29 U.S.C. § 2611(11). The Regulations indicate that a serious heath condition will *at minimum include either*: (1) a period of incapacity of more than three consecutive days *together with subsequent* multiple treatments or related periods of incapacity; (2) a period of incapacity due to pregnancy or for prenatal care; (3) a period of incapacity or treatment for incapacity due to a chronic serious health condition [12]; (4) a

10. Each of the named Plaintiffs are eligible employees as they have all been employed by Rubbermaid for over twelve months and have been employed for at least 1250 hours of service during the twelve month period immediately preceding commencement of leave. 29 C.F.R. § 825.110.

11. Under the applicable regulations, a "serious health condition requiring continuing treatment by a health provider" is further defined to include:

(i) A period of incapacity (i.e. inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom) *of more than three consecutive calendar days, and any subsequent treatment* or period of incapacity relating to the same condition, *that also involves:*

(A) *Treatment two or more times* by a health care provider . . .

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider. [or]. . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.

29 C.F.R. § 825.114 (emphasis added). *See also Hendry v. GTE North, Inc.,* 896 F.Supp. 816, 827 (N.D.Ind.1995).

12. A "chronic serious health condition" is further defined in the regulations as one which:

(A) Requires periodic *visits* for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

permanent or long-term period of incapacity due to ineffective treatment; or (5) a period of absence to receive or recover from multiple treatments by a health care provider for restorative surgery or a condition likely to result in incapacity if no treatment is received. 29 C.F.R. § 825.114(a)(2)(v), *See also Martyszenko v. Safeway, Inc.,* 120 F.3d 120, 123–24 (8th Cir.1997).

The FMLA also provides for "intermittent" leave, which allows an employee leave to attend appointments with a health provider for necessary treatment of a serious health condition. 29 U.S.C. § 2612; *See also* 29 C.F.R. § 825.117 (defining requirements for intermittent leave).

An employer [13] who interferes with, restrains, or denies exercise of any right to leave under the FMLA is liable and is subject to a claim for compensatory damages and, unless the court finds the violation occurred in good faith, additional liquidated damages. 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 2617(a)(1)(A); 29 C.F.R. § 825.220(c). The regulations specifically provide that FMLA leave time cannot be counted under a "no-fault" attendance policy. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(c). The relevant issue, therefore, is whether Plaintiffs' conditions, viewed as they allege them to be, qualify for protection under the FMLA.

**Plaintiff Beal**

■ Plaintiff Beal claims that the Defendant violated his rights under the FMLA by terminating his employment based on absences which should have been excused pursuant to the FMLA. At the outset it must be noted that only one day of absenteeism could possibly implicate the protections of the FMLA. Defendant argues that Beal was terminated for poor performance, not attendance, and thus the FMLA claim is misplaced. The court agrees with Defendant's argument. First of all, there is nothing which indicates Beal was terminated as a result of accumulating seven points. Although Beal contends that absenteeism was the reason for his ter-

mination, he produces no documentation to support his contention.

Evidence produced by Defendant, however, directly supports their argument. Defendant submitted a copy of Beal's status change form which specifically states Beal was discharged "for performance." Significantly when other employees, including Plaintiffs Stewart and McKay, were discharged for violation of the attendance policy, their status change forms specifically stated "attendance" as the reason for termination. Thus, it is reasonable to assume that if Beal was discharged for attendance, his status change form would reflect as much.

■ Additionally it is unlikely that Beal's relatively minor back injury is the type of injury Congress intended to cover under the FMLA. In the FMLA's legislative history, the Senate Committee Report listed the following as examples of "serious health conditions": "[B]ack conditions *requiring extensive therapy or surgical procedures* ... spinal injuries ... injuries caused by *serious accidents* on or off the job." S.Rep. No. 103–3, at 63 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3 (emphasis added). Admittedly, Beal was out of work for more than three consecutive days as a result of his back injury, and he did have one followup appointment with his physician. However, his subsequent appointments with the company physician were at the request of his supervisor, and not for the purpose of further treatment. Also, Beal does not recall if his physician prescribed any medication for him as a result of the injury, and he was not following any treatment regimen such as physical therapy.

■ Finally, even if the court believed that it could stretch the limits of the FMLA so as to include Beal's back injury within the concept of "serious health condition," Beal has submitted no evidence to establish that Defendant interfered with the exercise of any rights he may have under the FMLA. The only attendance point that Beal alleges he

---

(C) May cause episodic rather than a continuing period of incapacity (*e.g., asthma, diabetes, epilepsy,* etc.).

29 C.F.R. § 825.114 (emphasis added).

**13.** Under the FMLA an employer is one who employs fifty or more employees for each working day during each of twenty or more calender workweeks in the current or preceding calendar year. 29 C.F.R. § 825.104.

received in connection with his back injury was the point which was originally assessed after his absence on April 12 and 13, 1995. This point, however, was later waived by his supervisor. Thus, Beal suffered no discipline related to his back strain.

If the nonmoving party in a summary judgment fails to make sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then the party moving for summary judgment is entitled to judgment as a matter of law. See Fed.R.Civ.Pro. 56(e).

Beal has failed to demonstrate that Defendant unfairly or illegally violated his rights under the FMLA in any respect. He has not submitted any evidence demonstrating that he in fact has a serious health condition, was terminated as a result of such condition or was even disciplined as a result of such condition. Therefore, Defendant is entitled to summary judgment on this claim.

### Plaintiff Stewart

■ Plaintiff Stewart claims that Defendant violated her rights under the FMLA by terminating her employment based on several absences which she believes should have been exempt from the progressive discipline attendance policy, pursuant to the FMLA. Defendant contends that these absences were not exempt because Stewart's eczema does not qualify as a "serious health condition."

Not all health related absences trigger protection under the FMLA. "The term 'serious health condition' is intended to cover conditions that affect an employee's health to the extent that he or she must be absent from work on a recurring basis or for more than a few days for treatment or recovery." S.Rep. No. 3, at 28., (1993) U.S.Code Cong. & Admin.News 1993 at pp. 3, 30, *See also Seidle,* 871 F.Supp. at 242.

The court must decide whether there is an issue of material fact as to whether Stewart's condition qualifies as a FMLA protected condition. The court finds that no issue of material fact exists. To begin, Stewart never missed work for more than two days related to this condition. She admits that at only one time, in her memory, was she incapacitated for more than twenty–four hours due to the discomfort of eczema.[14] Thus, she does not meet the requisite three day incapacity. *See Bauer v. Dayton–Walther Corp.,* 910 F.Supp. 306, 310 (E.D.Ky.1996), *aff'd* 118 F.3d. 1109 (6th Cir.1997).

In the Supplement to Oral Argument filed by Stewart, she refers to a note signed by Dr. Cassady on March 6, 1995 which advises her not to return to work until March 10, 1995. She alleges that this note, together with her previous short term absences, amounts to "a series of periodic incapacity including a period of three days."[15] The court finds that there are two problems with Stewart's assertion. The first problem is that protection under the FMLA requires "a period of incapacity of more than three consecutive days together with *subsequent* multiple treatments or related periods of incapacity." *Martyszenko,* 120 F.3d at 123–24. Stewart's situation happened in the reverse. Although Stewart claims to have been periodically incapacitated by her skin condition since childhood, it was not until March 6, 1995, that she received a note excusing her from work for three or more consecutive days.

The second problem the court finds with Stewart's argument is that a review of her attendance chart reveals no absenteeism on these dates. Thus, the court can not determine the extent of Stewart's incapacity as a result of her condition at that time.

Moreover, Stewart's condition falls far short of the sort of chronic problems entailing episodic periods of incapacity contemplated by the FMLA, such as diabetes and epilepsy. As stated by the United States District Court in Kentucky "[b]roadly speaking, Congress sought to parse out [conditions] which it believed should be treated under sick leave policy from those *much more serious* [conditions] that implicate the protections of the FMLA." *Bauer,* 910 F.Supp. at 310 (emphasis added).

Even viewing the factual disputes most favorably for Stewart, by her own admission,

---

**14.** See Stewart Dep. at 80.

**15.** See Plaintiffs' Supplement To Oral Argument, page 3.

the eczema only caused her to be incapacitated for over one day and forced her to leave work only sporadically. Stewart was never hospitalized for this condition and she *visited* a health care provider only three times in a five year period. *See* 29 C.F.R. § 825.114.

Further, Stewart admits that she rarely, if ever, used prescription drugs to alleviate her symptoms. It is doubtful that taking over-the-counter medications and soaking constitute a regimen of continuing treatment necessary for qualifying under the FMLA. *See* 29 C.F.R. § 825.114(b). Eczema is likely the type of condition that Congress intended to be covered by a sick leave policy, not the FMLA.

As stated previously, one must have a "serious health condition" in order to trigger the FMLA. *Martyszenko,* 120 F.3d at 123–24. Since Stewart failed to make a sufficient showing of a serious health condition, Defendant is entitled to judgment on this claim as matter of law.

**Plaintiff Hughes**

Plaintiff Hughes claims that the Defendant violated her rights under the FMLA for failing to excuse her absences related to her bronchitis, as well as to her husband's diabetes and son's asthma.

■■■ As stated previously, not all health related absences trigger protection under the FMLA. The Regulations indicates that a "serious health condition" does not include short-term illness with brief treatment or recovery. See 29 C.F.R. § 825.114(e); *see also Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1035 (M.D.Tenn.1995); H.R.Rep. No. 8, pt. 1, at 40 (1993). Such conditions should be covered under the employer's sick leave policies. *See Brannon,* 897 F.Supp. at 1035. For a condition to qualify under the FMLA, there needs to be both a period of incapacity and continuing subsequent treatment by a health care provider. *Seidle,* 871 F.Supp. at 244; *see also* S.Rep. No. 3, (1993), *reprinted in* 1993 U.S.C.C.A.N. 2 at 30–31.

■■■ Under the above stated analysis, it is clear that Hughes' episode of bronchitis does not qualify for protection under the FMLA. Hughes was not incapacitated as she was still able to meet her family needs. Additionally, she received no continuing treatment by a

health-care provider. She took some prescription medications but never went back for a follow-up appointment. She also recovered quickly. Thus, this leave should have been covered under the company's sick leave policy, not under FMLA. Case law also supports this analysis. *See Hott v. VDO Yazaki Corp.,* 922 F.Supp. 1114, 1127–28 (W.D.Va.1996) (holding sinusitis bronchitis was not a serious health condition based on employee's ability to perform job functions); *Seidle,* 871 F.Supp. at 244 (where the court found that the plaintiff's son's one-time ear infection did not amount condition requiring "continuing treatment," when such condition merely required bed rest and oral medication administered by the patient's mother and following the initial examination, the physician had no further contact with the boy's mother). Therefore, Defendant did not violate Hughes' rights under the FMLA by assessing her a half-point when she left work due to this illness.

■■■ It is possible that Hughes' leave to care for her husband and son should have been covered under FMLA and thus should have been excused. Time off to care for a family member includes situations where as a result of a serious health condition, a family member is unable to care for his or her own basic medical, psychological, hygienic, safety, transportation or nutritional needs. 29 C.F.R. § 825.116; *see also Brown v. J.C. Penney Corp.,* 924 F.Supp. 1158, 1163 (S.D.Fla.1996). Hughes has met both requirements. The son and the husband both have conditions which are considered to be "serious health conditions" under the FMLA. 29 C.F.R. § 824.114. There is a least a question of fact as to whether Hughes was needed to care for these individuals while they were sick.

■■■ The problem that exists, however, is that Hughes cannot establish any causal harm from Defendant's possibly improper assessment of two half-points in violation of the FMLA. Hughes was not refused time off for these situations, nor was she terminated from her position as a result of her choice to take time off. She voluntarily quit, subsequent to a four-month layoff, during which time she received unemployment benefits

and continued to have Defendant pay the majority of her medical insurance premiums. As the court stated in *Paasch v. City of Safety Harbor*, 915 F.Supp. 315 (M.D.Fla. 1995), an employee cannot overcome the presumption that a resignation is voluntary merely by stating she was facing termination. *Id.* at 322. Even a direct statement that an employee will be fired for cause does not, of itself, constitute constructive discharge. *See Summit v. S–B Power Tool*, 121 F.3d 416 (8th Cir.1997); *see also Hill v. St. Louis Univ.*, 923 F.Supp. 1199, 1209 (E.D.Mo.1996). Hughes claims that she quit because she was warned that if she received one more point, she would be fired. However, by her own admission, Hughes received this warning in October, 1994. She did not quit until February, 1995. Because Hughes produced no evidence demonstrating harm by Defendant's actions, Defendant is entitled to summary judgment on this claim.

### Julie McKay

 Julie McKay claims that the Defendant violated her rights under the FMLA for failing to give her up to twelve weeks leave subsequent to her son's death. Defendant was not required under FMLA to grant this leave for two reasons. First, as stated previously, time off to care for a family member is allowed when a family member with a serious health condition is unable to care for his or her own basic needs. 29 C.F.R. § 825.116; see also *Brown*, 924 F.Supp. at 1163. Leave is not meant to be used for bereavement because a deceased person has no basic medical, nutritional, or psychological needs which need to be "cared for." *Brown*, 924 F.Supp. at 1163.

 Second, although McKay claims that she needed time off after the death of her son in order to deal with her own emotional issues,[16] she never requested any additional leave beyond the thirty days previously approved. By her own admission, she returned to work because she "needed the money."[17] Although, an employee need not expressly assert rights under the FMLA or even mention the FMLA, she does have an obligation to "state that leave is needed." *See* 29 C.F.R. § 825.302(c). McKay never made

such a request. Since it is unreasonable to expect an employer to offer time off when no request has been made, this court believes Defendant did not violate Hughes' rights under the FMLA by not offering her additional leave after the thirty days previously approved. See 29 U.S.C. § 2612(a).

 McKay also claims that Defendant violated her rights under the FMLA by discharging her after she took FMLA leave in connection with her back injury. McKay's injury, similar to Plaintiff Beal's injury, is unlikely to be the type of injury Congress intended to cover under the FMLA. *See* S.Rep. 103–3 at 63 (listing examples of serious health conditions including "back conditions requiring *extensive therapy or surgical procedures* " . . . and "*serious* accidents on or off the job" (emphasis added).

When McKay initially injured her back in April, 1995, she did not miss any work, was not put on any work restrictions, was able to perform all of her normal job functions, did not complete any sort of physical therapy, and did not seek subsequent followup treatment. Thus, this injury would not have been covered pursuant to the FMLA.

When she injured her back a second time three months later, she was able to work through the end of her scheduled shift, and after having her back readjusted once by her doctor, Dr. Cassady, was able to resume her regular activities with minimal restrictions. This injury, as well, does not appear to meet the requisite incapacity for protection under the FMLA. *See Kaylor v. Fannin Reg'l Hosp.*, 946 F.Supp. 988, 998 (N.D.Ga.1996) (finding plaintiff's "degenerative back injury" to be a "serious health condition" because it incapacitated him for three weeks).

Because McKay has failed to establish that she has a "serious health condition" or that her rights under the FMLA were infringed upon in any manner, Defendant is entitled to summary judgment on this claim.

### Conclusion of Law Regarding FMLA claims

It does appear that the Defendant is in violation of FMLA. Defendant's handbook

---

**16.** See Supplement to Oral Argument, page 5.

**17.** See McKay Dep. at 61.

requires a 30–day notice in all *"nonemergency"* situations. This appears to go beyond the requirements of the FMLA. The FMLA requires merely that if *"the leave is not foreseeable,"* an employee must give at least verbal notification to the employer within one or two business days from when the need for leave becomes known to the employee. 29 C.F.R. § 825.303.

Additionally, Defendant suggests in their pleadings and deposition questions that Plaintiffs should have specifically requested leave under FMLA. This is not required. See 29 C.F.R. § 825.208(a). The employee does not even have to mention the FMLA, he or she must only request leave time and state the reason for the leave. *See* 29 C.F.R. § 825.303(b). The FMLA states that the employer is responsible for classifying leave as FMLA–qualifying or not and giving notice of such classification to employees within two days of their request for leave. *Id.*

Such violations, however, need not be addressed in this order as none of the named Plaintiffs are eligible for protection under the FMLA. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2505. (1986). Therefore, Defendant's Motion for Summary Judgment in regards to the FMLA claims for each of the four Plaintiffs is **Granted.**

### B. Breach of Contract Claim

In the complaint, each of the Plaintiffs also makes a claim for breach of contract. They argue that the handbook acted as an employee contract and Defendant violated the provision related to the FMLA.

This claim should be dismissed for two reasons. First, assuming the handbook acted as a contract, if we find no violation of FMLA in regards to any of the Plaintiffs, then the Defendant can not have violated such provision in the handbook.

Further, the employee handbook does not amount to a contract. Following the 3–step test expounded in *McBride v. City of Sioux City,* 444 N.W.2d 85 (Iowa 1989), to be a contract: (1) the handbook must be sufficiently definite in its terms to create an *offer;* (2) the handbook must be communicated to and accepted by the employee so as to create an *acceptance;* and (3) the employee must continue working." *Id.* at 90, 91. Because Plaintiffs have failed to produce any evidence showing that there was any offer or acceptance of the handbook as a contract, Defendant is entitled to summary judgment on this claim.

### C. Violation of Rights Under Iowa Civil Rights Statute Claim

In Count III of the complaint, Beal alleges that Defendant violated his rights under the Iowa Civil Rights Act, Iowa Code 216.6(1) (1996), by discriminating against him based on age and disability. Beal has failed to establish the prima facie case for either type of discrimination.

In relation to the age discrimination claim, there are generally two methods by which a plaintiff can establish his claim: the *McDonnell Douglas* method [18] (indirect burden shifting) or the *Price Waterhouse* method (the mixed motive method). See *McDonnell Douglas v. Green,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25; *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268, 293 (1989).

Beal, however, must establish his claim by the *McDonnell Douglas* method. A mixed motive case arises either when "(1) the employer 'concedes that age was a discernible factor, but not a motivating one, for the

---

**18.** It is widely accepted that the allocation of the burden of proof in Iowa Civil Rights Act cases is the same as in cases arising under the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1988). *See Richmond v. Board of Regents,* 957 F.2d 595, 598 (8th Cir. 1992) (applying same prima facie case for analyzing Title VII, ADEA, and other employment discrimination claims). Thus, although the *McDonnell Douglas* case was brought under Title VII, Iowa courts have generally applied the same analytical framework to civil rights cases under Iowa Code Chapter 216. *Id.* at 802–03, 93 S.Ct. at 1824–25 (1973); *Kunzman v. Enron Corp.,* 902 F.Supp. 882, 902 (N.D.Iowa 1995) (citing *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 893–94 (Iowa 1990) and *Hulme v. Barrett,* 449 N.W.2d 629, 631–33 (Iowa 1989) rehearing denied 480 N.W.2d 40 (Iowa 1992).

employment decision' or (2) the 'trial court finds that a discriminatory reason was a discernible factor in the employer's decision-making process.'" *Schleiniger v. Des Moines Water Works,* 925 F.2d 1100, 1101 (8th Cir.1991) (citing *Mullins v. Uniroyal, Inc.,* 805 F.2d 307, 309 (8th Cir.1986)). Neither situation exists in this case and thus Beal must establish his case based on the allocated burden of proof of *McDonnell Douglas. McDonnell Douglas* at 802–05, 93 S.Ct. at 1824–25; *see also Chaffin v. Rheem Mfg.,* 904 F.2d 1269, 1272–73 (8th Cir.1990).

Beal must first establish a prima facie case of discrimination—that he was a member of a protected class, performing satisfactory work, and had adverse action taken against him, based on his age. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *see also Beshears v. Asbill,* 930 F.2d 1348 (8th Cir. 1991). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If this burden is carried, the plaintiff is given an opportunity to prove by a preponderance of the evidence that the employer's stated reasons were in fact merely a pretext. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25. The plaintiff retains the burden of persuasion at all times. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

■■■ Beal has not established the prima facie case under the *McDonnell Douglas* framework. Although he is within a protected age group under the Iowa statute, he has not presented any evidence that his performance was satisfactory at the time of his dismissal, nor has he submitted any evidence that age had anything to do with the decision of the Defendant to terminate his position. Beal readily admits that he never heard any derogatory statements made related to his age.[19] Additionally, there seems to be no indication that his age would play a factor in the dismissal decision as Beal's boss was the same age and out of the four other people who held the same position, two were older and two were younger.

Beal has failed to produce any evidence to prove two elements of the prima facie case.

Therefore, Defendant is entitled to summary judgment on this claim.

In relation to the disability discrimination claim, to establish a prima facie case, Beal must establish that he: (1) has a disability; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996).

■■■ In order to prove disability, a Plaintiff must have one of the following: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) he must be regarded as having such an impairment." 42 U.S.C. § 12102(2); *Robinson v. Neodata Servs., Inc.,* 94 F.3d 499, 501 (8th Cir.1996).

Beal produces no evidence which indicates that he fits within any of the above definitions. It is unlikely that Beal's relatively minor back injury would be deemed to limit one or more of his major life functions. Additionally, there appears to be no record of a disability, and it is clear that Defendant does not regard him as having a disability. Thus, Beal fails to meet the first prong of the prima facie case for disability discrimination.

As stated above, if Beal fails to make a sufficient showing of an essential element of his claim, then Defendant is entitled to judgment as matter of law. Fed.R.Civ.Pro. 56(e). Beal has failed to demonstrate that he is disabled within the meaning of Chapter 216. Therefore, Defendant is entitled to summary judgment on this claim.

**D. Retaliatory Discharge Claim**

Plaintiff McKay claims that Defendant terminated her position in violation of public policy. Since McKay cites no statute or case law regarding a possible violation, the court will address two possible claims.

■■■ In Iowa it is a violation of public policy to terminate an employee's position for

---

19. See Beal Dep. at 109, 110.

filing a worker's compensation claim. *Springer v. Weeks & Leo Co.*, 475 N.W.2d 630 (Iowa 1991). To prove a violation, McKay must demonstrate the following: (1) that she was an employee of Defendant, (2) her position was terminated, (3) she was discharged for filing a worker's compensation claim, (4) and such termination was the proximate cause of McKay's damage. *Id.* at 633. McKay has failed to produce evidence relating to the third element. First, there is no evidence submitted which demonstrates that McKay filed a worker's compensation claim or even intended to file such a claim. Additionally, McKay has not produced any evidence to indicate that her position was terminated as a result of her work injury, In fact, in her affidavit, McKay states that she was terminated because of her attendance record. Also, although the termination did come directly after she claims to have injured herself at work in July, the supervisor who made the termination decision was unaware of such injury. Because McKay failed to make a sufficient showing of this essential element, Defendant is entitled to summary judgment on this claim.

■ Even if McKay is claiming that she was terminated in retaliation for her exercise of valid FMLA leave, her argument would fail. *See* 29 U.S.C. § 2615(a)(2). The FMLA prohibits discrimination against any employee who attempts to exercise his rights under the FMLA.

■ In a retaliation claim brought pursuant to the FMLA, as in a discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, the plaintiff bears the ultimate burden of proving that FMLA leave was the determinative factor in the employment decision at issue. 29 U.S.C. § 2615(a)(2); *see also* S.Rep. No. 103–3 at 34, reprinted 1993 U.S.C.C.A.N. at 36 (quoting *McDonnell Douglas*, 411 U.S. at 796, 93 S.Ct. at 1821); *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989) (age discrimination claim). Consistent with the framework set forth in *Texas Department of Community Affairs v. Burdine*, a typical FMLA discrimination case involves the *McDonnell Douglas* burden shifting analysis. *Burdine*, 450 U.S. at 248, 101 S.Ct. at 1090–91. First, McKay must establish a prima facie case of FMLA discrimination.

Then the burden shifts to Defendant to show a legitimate nondiscriminatory reason for the employment action. Finally, McKay must show that Defendant's proffered reason is merely a pretext.

There are essentially two ways McKay could have established a prima facie case of FMLA discrimination: by presenting (1) direct evidence or (2) circumstantial evidence of discriminatory intent. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990).

"[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate ... constitute direct evidence of discrimination." Id. (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989). Accordingly, only truly blatant remarks demonstrating an intent to discriminate against employees who attempt to invoke their FMLA rights can constitute direct evidence of FMLA discrimination. McKay does not allege that any such remarks were addressed to her by Defendant at any time.

McKay additionally has presented no circumstantial of FMLA discrimination. No evidence submitted by McKay suggests that Defendant terminated McKay's employment because of legitimate FMLA leave. As discussed previously, McKay's injuries in April and July do not constitute "serious health conditions." Accordingly, Defendant did not retaliate against McKay for asserting her rights under the FMLA.

McKay has failed to prove her discharge was motivated by valid FMLA leave. Thus, she has failed to establish that Defendant violated her rights pursuant to the FMLA and Defendant is entitled to summary judgment on this claim.

## IV CONCLUSION

Based on the foregoing facts related to the named Plaintiffs, Defendant's Motion for Summary Judgment as to these Plaintiffs and the alleged class of Plaintiffs is **Granted.**

The Clerk of Court is directed to enter judgment in favor of Rubbermaid and

against Plaintiffs on Counts I, II, III, IV and V of Plaintiffs' Complaint.

IT IS SO ORDERED.