**Joann DAWSON, Plaintiff,**

v.

**LEEWOOD NURSING HOME, INC., et al., Defendants. (Two Cases).**

Nos. CIV.A. 97–990–A, CIV.A. 97–991–A.

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 5, 1998.

Declan C. Leonard, Martin, Arif & Soloway, Burke, VA, for Plaintiff.

Andrea Jean Sloan, McLean, VA, for Defendants.

*MEMORANDUM OPINION*

BRINKEMA, District Judge.

Before the Court are cross motions for summary judgment on plaintiff's claims under the Family and Medical Leave Act ("FMLA" or "the Act").

## I.

Plaintiff Dawson was employed by Leewood Nursing Home from 1971 until she was fired for abandoning her position on March 27, 1997. She had served as the Director of Nursing ("DON") since August 1, 1985. The DON position is the most senior nursing position, and Dawson reported directly to the nursing home Administrator, defendant Stuart R. Evans.[1]

---

1. The defendants originally named in Civil Action 97–990–A were Leewood Nursing Home, Evans,

In June 1996, Dawson was diagnosed with breast cancer and had to undergo chemotherapy. As a consequence, Dawson took leave from her job beginning on June 28, 1996. Specifically, from that day until September 26, 1996, Dawson worked an intermittent reduced-leave schedule, during which time she was paid her full salary and benefits. Beginning on September 26, 1996, Dawson went on medical leave, again with full pay and benefits. Dawson completed her chemotherapy treatment on October 2, 1996, and she spent the next few weeks recovering. It was during this period that plaintiff traveled to Hawaii, a trip which she asserts was taken as part of her recovery.

In late November, Dawson contacted Evans to discuss returning to work, and on December 5, 1996, the two met to discuss the matter further. According to Evans, he asked Dawson if she would be interested in taking over a newly created position, Director of Admissions, as it would be less stressful than the DON position. Dawson, however, remembers the discussion differently. She alleges that she asked to return as DON, but that Evans told her she would not be able to get her old job back.

On December 9, 1996, Dawson manifested severe and permanently disabling cardiac and pulmonary symptoms. Defendants assert that Dawson's physician attributed these symptoms to cardiotoxicity caused by the chemotherapy. Dawson's expert witness Dr. Timothy Bayly, however, has opined that the stress that Dawson suffered after the December 5, 1996, meeting with Evans was a "major cause" of the symptoms she developed several days later. In any event, it is undisputed that Dawson's medical condition precluded her from returning to work after December 9, 1996.[2]

In February 1997, Dawson through her counsel asserted her FMLA rights, designating her leave from January 1, 1997, forward as FMLA leave. Defendants accepted this designation, and Dawson continued to receive full pay and benefits during this period. On March 14, 1997, Evans sent Dawson a letter informing her that her leave would expire on March 27, 1997, and requesting that she forward him a doctor's statement that she was fit to return to work. Dawson never sent such a statement, nor did she return to work. On April 17, 1997, Evans sent Dawson a letter terminating her employment effective April 1, 1997, on the grounds that she had abandoned her position.

Plaintiff then filed this action, alleging that the defendant violated the FMLA by refusing to allow her to return to work as DON or in an equivalent position on December 5, 1996. Plaintiff seeks $200,000.00 in present and future lost wages and employment benefits.[3]

## II.

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir.1996).

### B. The FMLA

Congress enacted the FMLA "to entitle employees to take reasonable leave for medi-

and Lucille Lambert, an owner and manager of Leewood Nursing Home. On January 9, 1998, defendants filed a Suggestion of Death of Party pertaining to defendant Lambert, and the executor of her estate, J.T. Butler, was substituted as a party on May 15, 1998. Then, on July 9, 1998, defendants filed a Suggestion of Death of Party in the Form of Termination of Corporate Existence by Operation of Law. Apparently occasioned in part by the death of Lambert, Leewood Nursing Home, a Virginia corporation, automatically was terminated as a matter of law for failure to file its annual report and pay its annual

registration fee. Only Leewood Nursing Home and Evans were named in Civil Action 97–991–A.

**2.** Indeed, Dawson filed for Social Security benefits on February 6, 1997, stating that from December 9, 1996, forward, she had been physically unable to perform the duties of her job.

**3.** Plaintiff also alleged intentional infliction of emotional distress; however, the Court granted summary judgment in favor of the defendants on that claim by Order dated July 10, 1998.

cal reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). Under the Act, an eligible employee is afforded "a total of 12 workweeks of leave during any 12–month period … [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). When the employee returns from leave, she is to be restored to her former position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). Under the FMLA, employers are prohibited from denying or interfering with an employee's rights guaranteed by the Act and from discharging or discriminating against any eligible employee who exercises her rights thereunder. *See* 29 U.S.C. § 2615(a).

C. *Genuine Issues of Material Fact Preclude Summary Judgment on the Issue of Whether Plaintiff Was Entitled to FMLA Protections*

■ Before the Court can determine whether there was a violation of the FMLA, we first must resolve whether the plaintiff is entitled to the Act's protections. We find that she was so entitled. An eligible employee [4] is entitled to a total of twelve workweeks of leave during any twelve-month period when she suffers from a serious health condition that makes the employee unable to perform the functions of her position. *See* 29 U.S.C. § 2612(a)(1).

Defendants do not dispute that plaintiff's illness qualified her for FMLA coverage when she first went on leave. Rather, they argue that because plaintiff no longer suffered from a "serious health condition" in November and early December 1996, she was not entitled to the FMLA's protections when

she sought to return to work; thus, defendants argue that they were not obligated to restore plaintiff to her position as DON. *See Brown v. J.C. Penney Corp.,* 924 F.Supp. 1158, 1161 (S.D.Fla.1996) (finding that plaintiff, who took FMLA leave to care for his father who was suffering from a serious health condition, was no longer eligible for the Act's protections when he failed to return to work until almost a month after his father's death). Defendants point out that during November 1996, plaintiff was well enough to travel to Hawaii and that plaintiff testified that she could have returned to work on November 9, 1996, the date on which she went to Hawaii. *See* Pl. Dep. at 217–18.

In response, plaintiff asserts that she was in a recovery period at that time. Indeed, as the Court itself observed at oral argument, the affidavit of plaintiff's travel companion suggests that plaintiff was far from ready to return to work at that time, and even at the time that she sought to return to work in early December. *See* Susan Williams Aff. ¶¶ 4–6. In light of this contradictory evidence, the Court finds that there is a genuine issue of material fact that precludes the entry of summary judgment on this basis.[5]

D. *Genuine Issues of Material Fact Preclude Entry of Summary Judgment on the Issue of Whether Defendants Violated the FMLA*

■ Similarly, the parties have presented the Court with conflicting evidence regarding whether the defendants refused to allow plaintiff to return to work as DON and whether defendants offered her an equivalent position. In other words, there is a genuine issue of material fact on the issue of whether defendants violated the FMLA, even assuming that plaintiff was entitled to its protections. Indeed, as set forth above, resolution

4. An "eligible employee" under the FMLA is an employee who has been employed "for at least 12 months by the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2)(A).

5. We also note that defendants' argument really is after the fact. Under the FMLA, defendants could have requested certification from plaintiff's

health care provider if they doubted that she was not actually suffering from a serious health condition. *See* 29 U.S.C. § 2613(a); *see also* 29 U.S.C. § 2614(a)(4) ("As a condition of restoration … the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work.").

of these issues essentially comes down to a credibility determination. Accordingly, summary judgment also must be denied on this basis.

**E. *Even Assuming a Violation of the FMLA, Defendants Are Entitled to Summary Judgment as a Matter of Law***

Notwithstanding that genuine issues of material fact preclude the entry of summary judgment on the issue of whether defendants violated the FMLA, defendants argue that even if there were a violation, summary judgment still can be entered in their favor because on this record plaintiff cannot prove that she suffered any damages as a result of this violation. We agree. Indeed, even though the parties dispute what damages are recoverable under the FMLA, that issue is one properly resolved by the Court as it raises only a question of law.

**1. *Damages are an essential element of plaintiff's case***

■ In making this determination, the Court first addresses plaintiff's argument that proof of damages is not a part of the *prima facie* case. Indeed, to state a claim under the FMLA, plaintiff must establish that she is entitled to the protections of the FMLA and that her employer interfered with, restrained, or denied the exercise of her rights under the Act. *See* 29 U.S.C. § 2615(a)(1); *Spurlock v. NYNEX,* 949 F.Supp. 1022, 1033 (W.D.N.Y.1996). Although we find that plaintiff is technically correct with respect to the elements that she must prove as part of the *prima facie* case, we remind her that a plaintiff has standing to bring a lawsuit only if she has suffered an injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979))). Thus, once it becomes

clear that a plaintiff can recover nothing but a symbolic victory in that the defendant violated a statute, the lawsuit should be terminated. This is especially true for a remedial statute such as the FMLA, which provides that a right of action "to recover *the damages* or *equitable relief* prescribed in paragraph (1) may be maintained against any employer . . . by any one or more employees for and in behalf of (A) the employees; or (B) the employees and other employees similarly situated." 29 U.S.C. § 2617(a)(2) (emphasis added). Indeed, there are statutes that allow individuals to recover for symbolic victories. *See, e.g.,* The Privacy Act, 5 U.S.C. § 552a(g)(4)(A)· (providing that, where a court finds a willful violation of the Act, "the United States shall be liable to the individual in an amount equal to the sum of actual damages sustained by the individual as a result of the [violation], but in no case shall a person entitled to recovery receive less than the sum of $1,000"); 18 U.S.C. § 2707(c) ("The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000."). Thus, Congress' failure to include such language in the FMLA can mean only that it did not intend to allow individuals to recover for symbolic victories.

■ Because the FMLA clearly provides that employees have a right of action only to recover damages or to seek equitable relief for violations of the Act, and not to act as a private attorney general in enforcing the provisions of the Act, we find that a plaintiff must be able to show a reasonable likelihood that a rational trier of fact would award her damages or find that she is entitled to injunctive relief to avoid the entry of summary judgment in defendants' favor. Accordingly, the Court rejects plaintiff's argument, and we turn to the issues of what damages are recoverable under the FMLA and whether there is any evidence in this record to show that the plaintiff has sustained any such damages.

## 2. Damages recoverable under the FMLA

■ The FMLA provides that any employer who violates the Act is liable:

(A) for damages equal to—

(i) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617. As a preliminary matter, the Court finds that plaintiff could be afforded no equitable relief because it is undisputed that she is now completely and permanently incapacitated and therefore no longer capable of performing her job; therefore, subsection (B) is not applicable to this case. In addition, it is undisputed that plaintiff has received all pay and benefits to which she is entitled, including all leave benefits, through the date she was finally fired. *See* Pl. Dep. at 22–25. Thus, subsection (A)(i)(I) similarly is not applicable to this case, and we will proceed under subsection (A)(i)(II). We note that subsections (A)(ii) and (iii) are applicable only if there is an award of damages under subsection (A)(i).

Dawson argues that even though the defendants paid her full salary and benefits throughout the entire period at issue, she has sustained actual monetary losses as a direct result of the defendants' FMLA violation. Specifically, plaintiff argues, relying on the testimony of her expert witness, that "the stress Plaintiff encountered as a result of Defendant's illegal employment practices was a *major* cause of her eventual incapacitation." In other words, plaintiff seeks to recover future lost wages and employment benefits on the theory that the defendants' alleged failure to restore her to her position as DON or to an equivalent position proximately caused her to become incapacitated, thereby losing her future earning capacity. Plaintiff also asserts that she suffered damages as a result of the December 5, 1996, meeting because she was so distraught that she had to see a mental health care counselor.

The Court does not find the plaintiff's arguments persuasive. The statute itself gives an example of the type of damages that is recoverable when pay has not been denied, namely the cost of providing care. Plaintiff cites no cases that stand for the proposition that medical damages caused by the stress of a FMLA violation are recoverable under the Act. Moreover, there is case law that stands for the proposition that damages for injuries related to emotional distress are not recoverable under the FMLA because " 'other compensation' means things that arise as a quid pro quo in the employment arrangement.' " *Lloyd v. Wyoming Valley Health Care System, Inc.*, 994 F.Supp. 288, 291 (M.D.Pa. 1998); *see McAnnally v. Wyn S. Molded Prods., Inc.*, 912 F.Supp. 512, 513 (N.D.Ala. 1996); *Vicioso v. Pisa Bros., Inc.*, 1998 WL 355415, at *4 (S.D.N.Y.1998) ("[I]njured employees may not recover for anxiety or physical injury suffered as a result of a FMLA violation."). These decisions reason that Congress' decision to allow recovery under subsection (A)(i)(II) only for "actual mone-

tary damages" reflects its intent to limit the amount of compensatory damages that a plaintiff could recover.

The Court agrees with the reasoning of these decisions, and we find that the plain language of the FMLA supports our conclusion that the FMLA provides compensation only for "actual monetary losses sustained as a direct result of the [FMLA] violation." 29 U.S.C. § 2617(a)(1)(A)(i)(II). Accordingly, even if we assume that plaintiff could actually prove causation, we find no legal authority within the FMLA upon which to allow her to recover for the injuries she sustained as a result of the complications she suffered on December 9, 1996.

### 3. Recovery of attorneys' fees

 Finally, plaintiff argues that the FMLA provides that any plaintiff who proves a violation shall be awarded reasonable attorneys' fees and costs and that therefore no compensatory damages need be proved. Plaintiff cites only one unpublished district court decision from the Northern District of Texas to support her argument. That decision, however, does not really resolve the issue. Indeed, the court stated:

> In their briefs, the parties have not fully addressed the issue of what relief, if any, a plaintiff can recover if they establish a violation under the FMLA, but fail to provide any evidence of damages. Accordingly, because a ruling on defendant's [summary judgment] motion on this issue would be premature at this point, the court directs the parties to provide further briefing on this issue within 15 days of the issuance of this order.

*Nordhoff v. Haverty's Furniture Cos.*, 1997 WL 667888, at *4 (N.D.Tex. Oct. 17, 1997).

Despite the absence of cases on point, the Court finds that resolution of the issue can be found in the plain language of the FMLA itself. The statute provides: "The court in such an action [in which a violation is established] shall, *in addition to any judgment awarded* to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3) (emphasis added). This language makes it clear that the FMLA requires that attorneys' fees be awarded when a violation of the Act is established, but only in addition to a judgment. Accordingly, we find that where there is no reasonable likelihood of a judgment being awarded, there can be no basis upon which attorneys' fees are recoverable.

The Court notes that there is authority within this circuit to support our conclusion. In *McDonnell v. Miller Oil Co.*, the Fourth Circuit, noting that the FMLA "mandates an award of fees when the plaintiff receives a judgment," found that even when a plaintiff recovers only nominal damages for an FMLA violation, she still is entitled to an award of reasonable attorneys' fees and costs. *See* 134 F.3d 638, 640–41 (4th Cir.1998). Although the district court had awarded fees in this action, the Fourth Circuit remanded it to the district court to reconsider its award, advising that the award must be reasonable in light of the nominal damages recovered. *See id.* at 641. Based on this decision and the language of the statute itself, the Court finds that it must make a reasonable award of attorneys' fees whenever the plaintiff has proven a violation; however, as in the Fourth Circuit's *McDonnell* decision, this application appears to make sense if, and only if, after a trial, the plaintiff has proved a violation but the jury finds no damages or nominal damages. Yet that is not this case. Indeed, in an action like this one where it is established before trial that the plaintiff has no chance of recovering any damages, it would be highly unjust to the defendant and a waste of judicial resources to allow the case to proceed to trial merely so that the plaintiff can recover her attorneys' fees, which she would not have incurred if she had not pursued this claim. Moreover, as discussed above, to find otherwise would be in direct conflict with the established principle that a plaintiff must have standing to litigate an action in federal court.

Accordingly, the Court finds that on this record there is no genuine of issue of material fact with respect to whether the plaintiff has suffered any damages that are compensable under the FMLA. Because we find that she has not, defendants are entitled to judgment as a matter of law.

## III.

As the Court has previously expressed to the parties, this case exemplifies the old saying that "no good deed ever goes unpunished." Dawson's employer paid her a full salary and all of her benefits for a period of nearly nine months, even though she worked for only a fraction of that period, and even though she was entitled only to twelve weeks of unpaid leave under the FMLA. We note that in enacting the FMLA Congress intended "to entitle employees to take reasonable leave for medical reasons" and "to accomplish [that] purpose[ ] . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2)-(3). The Court finds that the defendants' actions here fully comported with the purpose behind the Act. Although the Court is sympathetic with the plaintiff, who will never be able to return to her job as the result of a tragic illness, her effort to obtain compensation under the FMLA is not supported by either the Act or the law.

Thus, for the reasons stated herein, by Order dated July 22, 1998, plaintiff's Cross Motion for Summary Judgment was denied, and defendants' Motion for Summary Judgment was granted.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.