Charles A. McBURNEY, Plaintiff,

v.

STEW HANSEN'S DODGE
CITY, Defendant,

No. CIV.4:02–CV–10293.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 5, 2004.

Kevin M. Kirlin, Roehrick Krull & Blumberg PC, Des Moines, IA, for Plaintiff.

Scott J. Beattie, Peddicord Wharton Spencer & Hook PC, Des Moines, IA, for Defendant and Plaintiff.

## ORDER

LONGSTAFF, Chief Judge.

The Court has before it defendant Stew Hansen's Dodge City's (Stew Hansen's) motion for summary judgment, filed October 16, 2003 Plaintiff resisted the motion November 14, 2003, and submitted his statement of material facts in dispute on December 9, 2003. Defendant filed responsive materials on December 17, 2003 and the motion is considered fully submitted.

## I. BACKGROUND

The following relevant facts either are not in dispute or are viewed in a light most favorable to plaintiff. Defendant Stew Hansen's is an automobile dealership located in Polk County, Iowa. In May 1998, plaintiff Charles McBurney was hired by defendant to serve as the night service manager. In this position, plaintiff was responsible for supervising several service technicians, retrieving vehicles from the dealership lot for service, processing pa-

perwork, assisting customers who left their vehicles for service, and securing the dealership at the end of the shift.

Stew Hansen's provided plaintiff and his co-workers with an employee handbook entitled "Hansen's Helpful Handbook," which outlined employee benefits and procedures. This handbook contained no reference to the Family & Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*, nor did it advise employees on how to apply for FMLA leave. By April 2000, however, defendant had FMLA leave forms available for employees. Plaintiff also recalls seeing a poster at the dealership which outlined the Act.

On April 24, 2000, plaintiff developed appendicitis, and ultimately underwent an appendectomy. Soon after the onset of plaintiff's illness, Patricia McBurney, plaintiff's wife, informed Service Manager Tom Sherwood of plaintiff's medical condition. The parties dispute whether Patricia McBurney told Sherwood plaintiff would be off work for six weeks. Sherwood stated that when he was told of plaintiff's condition, "the FMLA didn't even enter my mind." Deposition of Tom Sherwood at 45, Plaintiff's App. Exh. 4.

Patricia McBurney spoke to Sherwood by telephone several times during the next few weeks to update Sherwood on plaintiff's condition. On June 27, 2000, approximately nine weeks after the onset of his appendicitis, plaintiff was released to return to work.

Sherwood told plaintiff that another individual had filled in for plaintiff as night service manager during plaintiff's absence, and would quit if not allowed to continue in the position. Accordingly, Sherwood told plaintiff he planned to place plaintiff in the newly created position of quality control manager. In this position, plaintiff would receive the same pay and benefits as in his former position of night service manager.

Responsibilities of the position, which was performed during the day shift, included test driving automobiles that had been serviced to ensure the service had been performed properly. Plaintiff did not want to work the day shift, and considered the quality control manager position a "bogus, trumped-up job." Deposition of Charles McBurney at 76, 78, Plaintiff's App. Exh. 1. He accepted the position, however, believing that he would be terminated if he refused.

Plaintiff began experiencing symptoms of depression, fatigue and anxiety shortly after returning to work. Plaintiff found the position of quality control manager stressful because he had little work to do, had no desk or assigned workspace, and experienced conflicts with several mechanics and service advisors on the day shift.

On January 8, 2001, Stew Hansen's eliminated the position of quality control manager, and offered plaintiff the position of service advisor. Plaintiff told defendant he did not want to transfer to the position of service advisor, but was informed that his only other option was to quit working for Stew Hansen's. Plaintiff chose to accept the transfer.

As a service advisor, plaintiff was responsible for scheduling service appointments and managing service work to be performed, ensuring maintenance and repairs were sufficiently completed, and calculating the service costs. Plaintiff's benefits were the same as in his two previous positions. His salary, however, changed from a weekly fixed sum of $600 to commission, with a monthly draw of $800 against commissions. While employed as a service advisor, plaintiff received monthly draws and commissions as follows:

| January 2001 | $2,104.90 |
|---|---|
| February 2001 | $2,063.96 |
| March 2001 | $2,629.38 |
| April 2001 | $1,539.95 |

Exh. 12 to Deposition of Tom Sherwood, Plaintiff's App. Exh. 5.

Plaintiff complained to Stew Hansen's that the job of service advisor was stressful. Specifically, plaintiff's work schedule increased from about 40 hours per week to between 55 and 65 hours per week, and he was not adequately trained to perform the work involved. Specifically, plaintiff complained he was not given any instruction on how to use the computer system that service advisors were required to use.

Plaintiff's depression, fatigue and anxiety grew worse after his transfer to the service advisor position. On April 19, 2001, plaintiff suffered a mental breakdown, and sought treatment from a mental health care provider for the first time since 1997. Plaintiff's psychiatrist, Leonard S. Richards, D.O., opined that the change in plaintiff's employment after he returned to work in June 2000 significantly aggravated his agoraphobia and tendency to develop panic attacks.

Stew Hansen's placed plaintiff on leave under the FMLA. After exhausting his remaining FMLA entitlement for 2001, plaintiff's mental health condition prevented him from returning to work. Stew Hansen's formally terminated his employment for job abandonment.

To date, plaintiff has not returned to work at Stew Hansen's, and claims to be permanently and totally disabled due to severe depression and anxiety. He applied for and is receiving Social Security disability benefits.

Plaintiff filed the present one count complaint on June 26, 2002. Plaintiff alleges Stew Hansen's interfered with plaintiff's exercise of his rights under the FMLA as follows:

by failing to notify him of his rights under the law; by failing to provide him with proper forms in order to apply for, or certify his eligibility for, such leave; by failing to provide him with leave as required under the FMLA; by failing to return to the same or a substantially similar position as he previously held when he returned to work in June 2001; and by placing him in a position which caused or aggravated symptoms of depression and anxiety and rendered McBurney unable to perform any gainful employment.

Complaint at ¶ 25.

In its present motion for summary judgment, Stew Hansen's alleges plaintiff has failed to create a material issue of fact as to whether he can succeed on his FMLA claim due to the lack of available damages.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). "When the evidence would support conflicting conclusions, summary judgment should be denied." *Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 830 (8th Cir. 2000). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual dis-

putes that are irrelevant or unnecessary will not be counted." *Id.*

"Summary judgment should seldom be used in employment discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). Summary judgment should be granted only on the rare occasion where no dispute of fact exists and there is only one conclusion. *Id.* (citations omitted) (quotations omitted). The Court should not grant defendants' summary judgment motion "unless the evidence could not support any reasonable inference for the nonmovant." *Id.* (citations omitted).

### B. Whether Summary Judgment is Appropriate in Present Case

The FMLA entitles employees to take up to 12 weeks of leave annually due to "medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. §§ 2601(b)(2); 2612(a)(1)(D). The Act expressly prohibits an employer from interfering with or denying an employee rights under the Act, or from discharging or discriminating against an employee who exercises his FMLA rights. *Id.* at § 2615(a).

In the present case, plaintiff contends Stew Hansen's violated the Act by failing to notify him of his right to take FMLA leave, and/or in failing to classify his appendectomy-related leave as FMLA leave. Complaint at ¶ 25. Assuming plaintiff's appendectomy-related leave should have been classified as FMLA leave, plaintiff also claims defendant violated the Act by failing to return him to the same position or to a position that was substantially similar to that which he held prior to taking leave. *Id.* The Court finds these issues irrelevant to the present motion.

■ Regardless of whether the above conduct violated specific provisions of the Act, plaintiff has standing to bring the present suit only if he can show he has suffered an injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Dawson v. Leewood Nursing Home, Inc.*, 14 F.Supp.2d 828, 832 (E.D.Va.1998) (quoting *Valley Forge*). As explained by the *Dawson* court: "The FMLA clearly provides that employees have a right of action only to recover damages or to seek equitable relief for violations of the Act, and not to act as a private attorney general in enforcing provisions of the Act." *Dawson*, 14 F.Supp.2d at 832 (citing 29 U.S.C. § 2617); *see also Klaiber v. Rinaldi*, 2001 WL 823529 (M.D.N.C. June 20, 2001) ("courts have recognized that plaintiffs' [FMLA] claims are valid only if they have suffered some sort of measurable injury"). Accordingly, to survive entry of summary judgment in the present case, plaintiff must create a material issue of fact as to whether he suffered damages or is entitled to injunctive relief based on defendant's alleged FMLA violations. *See Dawson*, 14 F.Supp.2d at 832 ("once it becomes clear that a plaintiff can recover nothing but a symbolic victory in that the defendant violated a statute, the lawsuit should be terminated").

In his resistance memorandum, plaintiff concedes he did not pray for reinstatement, and that he is not capable of performing the duties of his former position with Stew Hansen's. Memorandum of Authorities in Support of Plaintiff's Resistance to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 6–7. Plaintiff argues, however, that he is entitled to recover "the wages and lost wages which he would have continued to earn but for the employer's refusal to reinstate plaintiff to the position of night service manager...." *Id.* at 9. He also seeks

interest on the lost wages and benefits, attorneys fees and costs. *Id.* at 8.

■ This Court disagrees. The FMLA does not require an employer to return an employee to the *same* position, but rather, to an "*equivalent* position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). The undisputed facts show plaintiff's benefits and wages did *not* decrease while he worked as quality control manager. The fact he was transferred from night-shift to day-shift is not controlling. *See, e.g., Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 769 (5th Cir.2001) (shift change not adverse employment action under meaning of FMLA).[1]

Admittedly, plaintiff has produced evidence suggesting he suffered an actual loss of wages during the four-months he served as a service advisor in early 2001. *See* Exh. 12 to Deposition of Tom Sherwood, Plaintiff's App. Exh. 5. The record is devoid of evidence, however, to suggest de-fendant's decision to transfer him to the position of service advisor was causally connected to his appendectomy-related leave. He therefore cannot establish his *prima facie* case with regard to this allegedly adverse employment action. *See, e.g., Darby v. Bratch,* 287 F.3d 673, 679 (8th Cir.2002) (to establish prima facie case of FMLA retaliation, plaintiff must show, among other elements, "that a causal connection existed between the employee's action and the adverse employment action").[2]

## III. CONCLUSION

For the reasons outlined above, defendant's motion for summary judgment is granted in full. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

IT IS ORDERED.

---

1. In *Cooper v. Olin Corp.,* 246 F.3d 1083, 1091 (8th Cir.2001), the Eighth Circuit reversed and remanded the district court's entry of summary judgment on an employee's FMLA claim when the employee was transferred to a position that afforded the same pay and benefits as her pre-FMLA leave position, but involved different duties and functions. In reaching this conclusion, the court stated that "the restoration of salary, title, and benefits does not necessarily constitute restoration to the same position within the meaning of section 2614(a)(1)(A) when the job duties and essential functions of the newly assigned position are materially different from those of the employee's pre-leave position.". *Cooper* is distinguishable from the present case, however, in that in *Cooper,* standing and available remedies were not at issue. Furthermore, assuming these issues *had* been raised, the plaintiff in *Cooper* had a viable claim for *injunctive* relief in the form of post-trial reinstatement. Here, plaintiff has conceded that "reinstatement is not an appropriate remedy in this case." Plaintiff's Memorandum, at 7.

Without the potential for either money damages or injunctive relief, plaintiff's claim is futile.

2. Plaintiff also cannot establish he is entitled to damages based on his final claim, that defendant placed him in a position that increased his anxiety and interfered with his ability to perform gainful employment. Complaint at ¶ 25. As explained above, Stew Hansen's placement of plaintiff in the quality control manager position after plaintiff recovered from his appendectomy did not result in a decrease of wages or benefits. Several courts have held that emotional distress damages are not available under the FMLA. *See, e.g., Dawson,* 14 F.Supp.2d at 833; *Lloyd v. Wyoming Valley Health Care System, Inc.,* 994 F.Supp. at 291 (M.D.Pa.1998); *Vicioso v. Pisa Bros., Inc.,* 1998 WL 355415 at *4 (S.D.N.Y. 1998). Accordingly, even assuming plaintiff could prove a causal link between his change in position and his increased anxiety, the FMLA does not allow recovery for such an injury.