# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1354

_____

Charles A. McBurney,                                 *
                                                     *
          Appellant,                *
                                                     *    Appeal from the United States
     v.                                        *    District Court for the
                                                     *    Southern District of Iowa.
Stew Hansen's Dodge City, Inc.,                      *
                                                     *
          Appellee.                 *

_____

Submitted: November 15, 2004
Filed: February 16, 2005

_____

Before SMITH, LAY, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Charles A. McBurney filed suit against Stew Hansen's Dodge City, Inc., (Stew Hansen's) alleging a violation of the Family and Medical Leave Act of 1991 (FMLA), 29 U.S.C. § 2601 *et seq.* The district court[1] granted summary judgment in favor of Stew Hansen's and McBurney appealed. We affirm.

_____

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

## I. *Background*

In May 1998, Stew Hansen's hired McBurney as a Night Service Manger. McBurney regularly worked from 4:00 p.m. to 12:00 a.m. five nights a week. On some occasions, McBurney would work past 12:00 a.m. As part of his job, McBurney supervised a number of mechanics, aided in hiring mechanics, helped repair vehicles, and helped customers who dropped their vehicles off after regular business hours. In addition, McBurney prepared billing reports, retrieved parts from inventory, moved vehicles into service work bays, and closed the shop at the end of each night shift by locking doors and setting the security alarm. In April 2000, McBurney underwent an emergency appendectomy and, due to complications, was forced to undergo a second abdominal surgery within twenty-four hours. The recovery from the second surgery required McBurney to be hospitalized for several weeks. McBurney's wife, Patricia McBurney, called Stew Hansen's on April 25 and informed them that McBurney would remain in the hospital for two to three days and would then be on doctor's orders to rest at home for six weeks.

Unfortunately, McBurney's hospital recovery was longer than anticipated, lasting several additional weeks. During that time, Patricia again called Stew Hansen's to advise the dealership of McBurney's delayed recovery. On June 27, 2000, after his discharge and convalescence, McBurney called Stew Hansen's and told them that he had been cleared by the doctor to resume work. Tom Sherwood, Stew Hansen's service manager, invited McBurney to have lunch and explained to McBurney that another person, Greg Brimeyer, had filled in as Night Service Manager in his absence and would assume the full-time position permanently.

Sherwood explained that McBurney would be shifted to Quality Control Supervisor, a position created to meet the quality control requirements of the Chrysler Corporation. As a Quality Control Supervisor, McBurney was scheduled to receive the same pay and benefits that he received as Night Service Manager. McBurney requested that he return to his position as Night Service Manager and

explained that he would rather not work during the day. Stew Hansen's denied McBurney's request and he returned to work as the new Quality Control Supervisor.

As Quality Control Supervisor, McBurney test drove repaired vehicles and answered telephones. During the test drives, McBurney would record any unusual sounds or observations. Stew Hansen's never advised McBurney of his specific job duties and he was often idle. After serving as Quality Control Supervisor, for the remainder of 2000, McBurney began experiencing symptoms of depression, fatigue, and anxiety.

In January 2001, Stew Hansen's discontinued the Quality Control Supervisor position and made McBurney a daytime "Service Advisor." McBurney told Stew Hansen's that he did not want to be a Service Advisor, but was told that he could take the position or quit. McBurney did not receive any training for the Service Advisor position and found the 55-65 hour workweeks to be stressful. In contrast, when he was a Night Service Manager, McBurney routinely worked only 40 hour workweeks. His new duties as Service Advisor included scheduling service appointments and managing service work to be performed, ensuring maintenance and repairs were sufficiently completed, and calculating service costs. The transfer to Service Advisor also brought a salary change. As Night Service Manger and Quality Control Supervisor, McBurney received a salary of $660 per week. As a Service Advisor, McBurney received a lower salary, but an additional part of his pay was commission based and provided the opportunity for McBurney to earn more money than the straight salary position of either Night Service Manager or Quality Control Supervisor.

While Service Advisor, McBurney's depression, fatigue, and anxiety continued to worsen until he suffered a mental breakdown on April 16, 2001. McBurney's psychiatrist, Dr. Richards, diagnosed McBurney with onset of panic disorder coupled with agoraphobia. Dr. Richards had treated McBurney for a panic disorder McBurney

experienced several years earlier. Dr. Richards opined that the change in McBurney's work aggravated his preexisting mental health problems. According to Dr. Richards, the mere anticipation of dealing with unhappy strangers was sufficient to trigger or exacerbate McBurney's panic attacks.

McBurney was placed on Family and Medical Leave for twelve weeks. At the expiration of the twelve weeks, McBurney failed to return to work and Stew Hansen's discharged him. McBurney then filed an action in the district court alleging a violation of the FMLA. The district court granted Stew Hansen's summary judgment motion and McBurney filed the instant appeal.

## II. *Discussion*

We review the grant of summary judgment de novo. *N. Natural Gas Co. v. Iowa Util. Bd.*, 377 F.3d 817, 820 (8th Cir. 2004). Summary judgment is appropriate if the record, viewed in a light most favorable to the non-moving party, contains no questions of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. *Kincaid v. City of Omaha*, 378 F.3d 799, 803 (8th Cir. 2004); *see also* Fed. R. Civ. P. 56(c). In viewing the evidence, the non-moving party is entitled to all reasonable inferences to be drawn from the record. *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). The moving party bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *Kincaid*, 378 F.3d at 803–04 (8th Cir. 2004); *see also* Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his or her pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Kincaid*, 378 F.3d at 804 (8th Cir. 2004); *see also* Fed. R. Civ. P. 56(e).

### *Relief Available Under the FMLA*

McBurney argues that the district court erred in concluding that he lacked standing under the FMLA for failing to produce evidence of damages. McBurney

contends that he maintained a right "to injunctive or other equitable relief."[2] McBurney argues that he is entitled to front pay as an equitable form of damages under the FMLA and therefore does have standing contrary to the conclusion of the district court. McBurney contends that Stew Hansen's failure to reinstate him to the same or equivalent position as Night Service Manager caused him to be mentally incapacitated such that he can no longer work. As such, he seeks compensation for financial losses after trial due to Stew Hansen's allegedly unlawful actions; that is, the loss of future wages.

We note that McBurney argues entitlement to front pay for the first time on appeal. The district court never considered the issue. Indeed, McBurney failed to argue a claim for front pay in response to Stew Hansen's motion for summary judgment. Furthermore, in discovery, McBurney specifically asserted that he was not seeking front pay.

Absent exceptional circumstances we will not consider arguments raised for the first time on appeal. *Daisy Mfg. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir.1994). We have held that a plaintiff waives the issue of front pay by first raising it in a motion to alter or amend the judgment. *Moysis v. DTG Datanet*, 278 F.3d 819, 829 (8th Cir. 2002) (citing *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1171 (6th Cir.1996)). Likewise, we hold that McBurney has waived any claim to front pay by asserting it for the first time on appeal.

---

[2]The FMLA clearly provides for equitable relief. The pertinent statute states that any employer who violates the FMLA "shall be liable to any eligible employee affected . . . for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C.A. § 2617(a)(1)(B). Front pay is designed to provide an equitable remedy when it is impractical to order the employee's reinstatement to his or her previous job. *See Williams v. Pharmacia*, 137 F. 3d 944, 952 (7th Cir. 1998); *Kelly v. Airborne Freight*, 140 F.3d 335, 354 (10th Cir. 1998).

McBurney concedes that he received the same pay and benefits after his return to Stew Hansen's as Quality Control Supervisor. He also concedes that he cannot return to work due to his condition, and, therefore, did not seek employment, reinstatement, or promotion from Stew Hansen's. His entire damage claim rests upon the recovery of front pay, a claim that he has waived. In an action brought under the FMLA, "a plaintiff must be able to show a reasonable likelihood that a rational trier of fact would award . . . damages or find [an entitlement] to injunctive relief to avoid the entry of summary judgment." *Dawson v. Leewood Nursing Home, Inc.*, 14 F. Supp.2d 828, 832 (E.D.Va. 1998). In this case, McBurney failed to produce evidence of damages. The district court did not err in granting summary judgment.

*Retaliation*

As a separate claim, McBurney contended that Stew Hansen's transferred him from Quality Control Supervisor to Service Advisor to retaliate for his using FMLA related leave. On appeal, McBurney argues that the district court erred in granting summary judgment based on his failure to establish a causal connection between his secondary transfer to Service Advisor and his FMLA related leave. Retaliation through an adverse employment action based on an employee's exercise of FMLA rights is actionable. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827 (8th Cir. 2002). An employee can prove FMLA retaliation circumstantially, using a variant of the burden shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *Id.*

To establish a prima facie case of retaliation, McBurney must show that he exercised rights afforded by the Act, that he suffered an adverse employment action, and that there was a causal connection between his exercise of rights and the adverse employment action. *Id.*; *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002). At issue in

this case is whether McBurney can show a causal connection between his FMLA leave and his transfer from Quality Control Supervisor to Service Advisor.[3]

Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a casual connection has been established. *Smith*, 302 F.3d at 833. We have held that a two-month interval between protected activity and termination diluted any inference of causation such that the temporal connection could not justify a causal link as a matter of law. *Id.* (citing *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893 (8th Cir.2002)). In *Kipp* we held that the kind of causal connection required for a prima facie case is not "but for" causation, but rather, a showing that an employer's "retaliatory motive played a part in the adverse employment action." *Kipp*, 280 F.3d at 897 (internal quotation omitted).

In this case, six months passed between McBurney's return from FMLA leave and his transfer to Service Advisor. In addition, McBurney was not discharged; rather, he was laterally transferred after Stew Hansen's made the business decision to eliminate the Quality Control Supervisor position. McBurney's transfer to Service Advisor actually afforded him the opportunity to make more money. Moreover, Stew Hansen's honored McBurney's request for FMLA leave. Viewing the facts in the light most favorable to McBurney, we hold that the evidence does not establish a sufficient causal link. Neither time nor discriminatory actions link his secondary transfer to Service Advisor with his FMLA related leave. Accordingly, McBurney failed to make a prima facie case of retaliation.

For the foregoing reasons, we affirm the grant of summary judgment.

---

[3]Stew Hansen's concedes that McBurney exercised his rights under the FMLA and that his approximate $1500 loss in income stemming from his shift to Service Advisor constitutes an adverse employment action.

LAY, Circuit Judge, dissenting.

The Family Medical Leave Act (FMLA) provides employees with a private right of action, 29 U.S.C. § 2617(a)(2), to recover damages when an employer interferes with an employee's exercise of FMLA rights, 29 U.S.C. § 2615(a)(1). To prevail on an interference claim, the employee must establish that the employer interfered with a right to medical leave or failed to reinstate the employee to the same or an equivalent position upon return to work. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). The employer's intentions are irrelevant. *Id.* The employer is required to restore the employee to the same position, or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." § 2614(a)(1)(B). "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). "[U]pon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits . . . ." *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) (citation omitted). A position that offers comparable pay, but has fewer opportunities for advancement or future increases in salary does not offer the same benefits. *Id.* at 679-80.

I conclude that there is a dispute of material fact regarding the equivalency of the Night Service Manager position and the Quality Control position. While McBurney may concede that the rate of pay and structure of standard benefits between the two positions were the same, this is not tantamount to conceding equivalency under the FMLA.[4] The record shows that McBurney's former position

---

[4]I concur with the majority on several important points: First, McBurney has waived his ability to obtain front pay damages by failing to raise it below; second, damages for emotional distress and lost future wages are not available under the

of Night Service Manager was a managerial job supervising six mechanics, retrieving parts, ensuring service was done correctly, discussing repairs with customers, and calculating bills. The Night Service Manager job was an established position in the organization, and was sought after by other employees, had a recognized and respected title, and occupied a permanent office. The newly-created Quality Control position was not managerial, lacked recognition and respect internally, played an ill-defined role in the organization's operations, and lacked an office.

While the pay was the same, the Quality Control position had non-equivalent working conditions, privileges, perquisites, and status, and thus was not equivalent under the FMLA. *See* 29 C.F.R. § 825.215(a). Moreover, the new position was so utterly lacking in value to the organization that it offered virtually no job security. An employee who valued his employment would be ill-advised to choose this new Quality Control position with no job description and little responsibility over the established Night Service Manager position, which was important to the organization's success. At the very least, McBurney has presented a dispute of material fact whether these two positions were equivalent.

I suggest the real issue before us in assessing McBurney's interference claim on summary judgment is whether McBurney can prove damages flowing from this violation of the FMLA. The majority ends its inquiry into McBurney's interference claim after it concludes, incorrectly in my view, that McBurney's entire interference claim rests on the non-compensable damages of emotional distress and lost future

Family Medical Leave Act (FMLA); and third, McBurney has failed to identify any evidence of a retaliatory animus on the part of Stew Hansen's necessary to sustain his retaliation claim. However, I dissent from the majority's opinion that McBurney has not identified damages for his remaining claim of interference with his FMLA rights. I conclude that McBurney has identified compensable damages in the amount of $1,561.81 and that a genuine dispute of material fact regarding equivalency of the Night Service Manager position and the Quality Control position prevents summary judgment on McBurney's interference claim.

wages. To the contrary, the record shows a monetary loss of $1,561.81 in reduced wages in the Service Advisor position. I believe that, if McBurney can prove causation, the subsequent loss is compensable under the FMLA.

Viewing the facts in the light most favorable to McBurney, as we must on summary judgment, we are presented with the following facts: Stew Hansen's gave McBurney's job to another employee while he was on FMLA leave; Stew Hansen's concocted the Quality Control position at the last minute upon McBurney's return from leave to avoid liability under the FMLA; the Quality Control position was purely a sham position that lacked any job description or defined duties; Stew Hansen's quickly eliminated the Quality Control position because it served no real business purpose; upon eliminating the Quality Control position, Stew Hansen's abruptly transferred McBurney to yet another non-equivalent position; and in this last position McBurney experienced reduced wages in the sum of $1,561.81. The key question on summary judgment for McBurney's interference claim is whether he can prove the loss of $1,561.81 was caused by Stew Hansen's violation.

McBurney has a tough case to prove under an interference theory, but it is his case to prove. I respectfully disagree with the majority and would hold that summary judgment is not appropriate on McBurney's interference claim.

_____

-10-